UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ROSEMARY COMENA

VERSUS                                          CIVIL ACTION

CITY OF BATON ROUGE/PARISH OF                   NUMBER 08-714-RET-SCR
EAST BATON ROUGE, THROUGH BATON
ROUGE METROPOLITAN AIRPORT

### **NOTICE**

    Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

    In accordance with 28 U.S.C. §636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

    ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

    Baton Rouge, Louisiana, April 11, 2011.

                                  STEPHEN C. RIEDLINGER
                                  UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ROSEMARY COMENA

VERSUS                                          CIVIL ACTION

CITY OF BATON ROUGE/PARISH OF                   NUMBER 08-714-RET-SCR
EAST BATON ROUGE, THROUGH BATON
ROUGE METROPOLITAN AIRPORT

**MAGISTRATE JUDGE'S REPORT**

Before the court is defendant Westchester Surplus Lines Insurance Company's Motion for Summary Judgment. Record document number 33. Oppositions to the motion were filed by both plaintiff Rosemary Comena and defendant City of Baton Rouge/Parish of East Baton Rouge, through Baton Rouge Metropolitan Airport (hereafter, the "Airport").[1]

The parties' arguments have been carefully considered. Based on the applicable law, the undisputed facts and the analysis which follows, Westchester's motion for summary judgment on the issue of coverage should be granted.

**Background**

Plaintiff filed suit in state court against the Airport, her employer, on September 21, 2008. Plaintiff alleged that she began working for the Airport in October 1977 and at the time suit was

---

[1] Record document numbers 36 and 37, respectively.

filed she held a position in airport field maintenance. Defendant Airport removed the case to this court, asserting jurisdiction under 28 U.S.C. § 1331, on October 31, 2008. Plaintiff claimed that beginning in approximately 2006 and continuing thereafter, her supervisors subjected her to unwelcome disability-based, race-based and retaliatory harassment. As a result of their alleged conduct, plaintiff initially asserted the following claims:

(1) 42 U.S.C. § 1983 claim for violation of her First Amendment right to report unlawful discrimination, and Fourteenth Amendment rights to due process/reputation/bodily integrity and to be free from discrimination and harassment on account of her race and disability;

(2) 42 U.S.C. § 1981 claim for race discrimination that impaired her right to make and enforce contracts; and,

(3) state law claims for discrimination under Louisiana Employment Discrimination Law and for reprisal, intentional infliction of emotional distress, assault, battery and abuse of rights.[2]

After removal, the plaintiff filed several supplemental and amending petitions which added a claim under Title VII, 42 U.S.C. § 2000e, and she joined the Airport's insurer, Westchester Surplus

---

[2] Record document number 1-1, Petition, ¶¶ 17-25.

Lines Insurance Company, as an additional defendant.[3]

Defendant Westchester moved for summary judgment on grounds that the plaintiff's claims are not covered under the ACE Advantage Airport Public Officials' Liability Policy issued to the Airport. Westchester asserted that the applicable policy provisions require a claim to be both made **and** reported to the insurer within the same policy period. According to Westchester, there is no coverage because the undisputed facts show that the plaintiff's claim was made during the policy which covered the period from 2/28/08 to 2/28/09, but was not reported during that policy period or within 30 days after the end of that period.

In support of the motion Westchester relied on a statement of undisputed facts,[4] and the following exhibits: (1) copy of Policy Number G23984076 002, for policy period 2/28/2008 to 2/28/2009;[5] (2) copy of Policy Number G23984076 003, for policy period 2/28/2009 to 2/28/2010;[6] (3) copy of the plaintiff's state court

---

[3] Record document number 11, Supplemental and Amending Petition; record document number 14, Second Supplemental and Amending Petition; record document number 17, Third Supplemental and Amending Petition; record document number 23, Fourth Supplemental and Amending Petition.

[4] Record document number 33-2.

[5] Record document number 33-1, pp. 1-31, Westchester exhibit A. The named insured for this policy was "Greater Baton Rouge Airport District."

[6] Record document number 33-1, pp. 32-64, Westchester exhibit B. The named insured for this policy was "Greater Baton Rouge
(continued...)

Petition;[7] (4) copy of the Airport's Notice of Removal;[8] and, (5) affidavit of Timothy Loyal, Senior Claims Specialist for Westchester's claims servicing agent, with attached true and correct copies of the two policies.[9]

Plaintiff opposed Westchester's motion, essentially relying on the extended reporting period provision of the policy covering the period from 2/28/08 to 2/28/09.[10] Plaintiff argued that accepting Westchester's assertion that the claim was made when she filed suit on September 12, 2008, and the Airport reported to it to Westchester on August 20, 2009, the reporting occurred during the extended reporting period of the 2008-2009 policy. According to the plaintiff, this provision establishes coverage under the terms of the policy. Plaintiff submitted an opposition to Westchester's Statement of Uncontested Material Facts.[11] Plaintiff's exhibits consisted of letters, forms and questionnaires related to the plaintiff's charge of discrimination filed with the Louisiana

---

[6](...continued)
Airport."

[7] Record document number 33-1, pp. 66-74, Westchester exhibit C.

[8] *Id.* pp. 76-81, Westchester exhibit D.

[9] Id. pp. 83-152, Westchester exhibit E.

[10] *Id.* pp. 86-115, Westchester exhibit E, Policy Number G23984076 002.

[11] Record document number 36-2.

4

Commission on Human Rights and the Equal Employment Opportunity Commission,[12] and a copy of Westchester's Responses to Plaintiff's Written Discovery Requests, along with a copy of the Westchester policy issued for the policy period 2/28/2007 to 2/28/2008.[13]

The Airport adopted the plaintiff's argument that her claim was timely reported during the extended reporting period of the 2008-2009 policy. The Airport also made several alternative arguments: (1) accepting Westchester's contention that the claim was not reported until August 20, 2009, the plaintiff's Title VII claims were both made and reported within the 2009 policy period because the claims were not made until after the plaintiff received her Notices of Right to Sue and she asserted the claims in her supplemental and amending petitions filed in April and May 2009; (2) the consecutive policies in effect from February 2008 to February 2011, without any lapse in coverage, had the effect of extending the reporting period for each policy; (3) Westchester's claims-made policy violates Louisiana law and public policy because it has the effect of reducing the prescriptive period for the plaintiff to file suit against the insurer;[14] and, (4) the Airport

---

[12] Record document number 36-3, plaintiff exhibit A. These are all 2007 or 2008 documents.

[13] Record document number 36-4, plaintiff exhibit B. The named insured for the 2007-2008 policy was "City of Baton Rouge."

[14] In support of this argument the Airport cited LSA-R.S. 22:868 and *Bennett v. Krupkin*, 1999-2702 (La.App. 1 Cir. 12/22/00),
(continued...)

5

adequately and timely reported the claim by affirmatively answering questions in the policy applications regarding its involvement in employment/labor related litigation and administrative procedures that address employment-related claims in the last three years.

To support its opposition, the Airport submitted the affidavit of Anthony Marino, Airport Director for the Baton Rouge Metropolitan Airport, who attested to continuous coverage from February 2008 under the Westchester policy.[15] Attached to the affidavit were copies of the policy applications completed and signed on February 8, 2006,[16] February 16, 2007,[17] and January 4, 2010.[18] The Airport also filed a statement of undisputed facts.[19]

**Summary Judgment Standard and Applicable Law**

Summary judgment is proper if the record taken as a whole shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Rule 56©, Fed.R.Civ.P.; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106

---

[14](...continued)
779 So.2d 923; *LeBlanc v. Succession of Raggio*, 2000-2407 (La. App. 1 Cir. 2/20/02), 818 So.2d 140.

[15] Record document number 37-2, Marino affidavit.

[16] Record document number 37-3.

[17] Record document number 37-4.

[18] Record document number 37-5.

[19] Record document number 37-6.

S.Ct. 2548, 2552 (1986). The party moving for summary judgment bears the burden of identifying those portions of the record it believes demonstrates the absence of a genuine issue of material fact. *Coleman v. School Bd. of Richland Parish*, 418 F.3d 511, 515 (5th Cir. 2005). To overcome summary judgment the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *Riverwood Intern. v. Employers Ins. of Wausau*, 420 F.3d 378, 382 (5th Cir. 2005). The court must view all the evidence and reasonable inferences from the evidence in the light most favorable to the nonmoving party. *Lincoln Gen. Ins. Co. v. Reyna,* 401 F.3d 347, 349 (5th Cir. 2005).

Whether contract language is clear or ambiguous is a question of law. *Guidry v. American Public Life Ins. Co.*, 512 F.3d 177, 181 (5th Cir. 2007); *In re Combustion*, 960 F.Supp. 1076, 1079 (W.D.La. 1997). Because the proper interpretation of an unambiguous contract is a legal issue, it may appropriately be decided by summary judgment. *Martco Ltd. Partnership v. Wellons, Inc.*, 588 F.3d 864, 878 (5th Cir. 2009).

Under Louisiana law an insurance policy is a contract that must be construed according to the general rules of interpretation of contracts set forth in the Louisiana Civil Code. *Coleman*, 418 F.3d at 516-17. These general rules are:

> Under the Civil Code the judiciary's role in interpreting insurance contracts is to ascertain the common intent of the parties to the contract. The words of a contract must be given their generally prevailing meaning and when

7

>     the words of a contract are clear and explicit and lead
>     to no absurd consequences, no further interpretation may
>     be made in search of the parties' intent. Moreover, each
>     provision in a contract must be interpreted in light of
>     the other provisions so that each is given the meaning
>     suggested by the contract as a whole. (internal citations
>     and quotations omitted).

*Id.*, at 517.

When the language of an insurance policy is clear, the courts do not have the authority to alter its terms under the pretext of interpretation. *Id.*, at 518. A contract is ambiguous if after applying the rules of contract interpretation, the contract is uncertain as to the parties' intent and susceptible to more than one reasonable interpretation. *Riverwood Intern.*, 420 F.3d at 382. If there is any ambiguity within an exclusionary provision or the policy as a whole it must be construed against the insurer and in favor of coverage. *Coleman*, 418 F.3d at 517, *citing*, *Mayo v. State Farm Mut. Auto. Ins. Co.*, 2003-1801 (La. 2/25/04), 869 So.2d 96, 100. Summary judgment declaring a lack of coverage under a policy may not be rendered "unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded." *Cochran v. B.J. Services Co. USA*, 302 F.3d 499, 503 (5th Cir. 2002), *citing*, *Smith v. Travelers Prop. Cas.*, 35,695 (La.App. 2 Cir. 2/27/02), 811 So.2d 1097, 1100.

**Analysis**

The analysis of the coverage issue must begin with the relevant policy provisions. Policy Number G23984076 002 covering

8

the policy period February 28, 2008 to February 28, 2009 provided in pertinent part as follows:

> **THIS POLICY IS A CLAIMS MADE AND REPORTED POLICY. EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY COVERS ONLY CLAIMS FIRST MADE AGAINST THE INSUREDS AND REPORTED TO THE INSURER DURING THE POLICY PERIOD AND ARE THE RESULT OF WRONGFUL ACTS COMMITTED ON OR AFTER THE RETROACTIVE DATE BUT BEFORE THE END OF THE POLICY PERIOD.**[20]

Part I, INSURING AGREEMENTS, Subsection B is entitled Employment Practices Liability, and states in relevant part as follows:

> ...the **Insurer** will pay **Damages** and **Claim Expenses** of the **Insured** for which the **Insured** becomes legally obligated to pay by reason of a **Claim** first made against the **Insured** and reported to the **Insurer** during the **Policy Period**, or, if elected, the **Extended Reporting Period**, for any **Wrongful Act** taking place on or subsequent to the **Retroactive Date** specified in Item 9 of the Declarations and prior to the end of the **Policy Period**, if such **Claim** is brought and maintained by or on behalf of any past, present, or prospective full-time, part-time, temporary or leased employee(s) of the **Named Insured**.[21]

Part II, the DEFINITIONS section of the policy, defines several terms that are relevant to the analysis - Claim, Policy Period, Wrongful Act and Wrongful Employment Practice, as follows:

> D. **Claim** means:
>
> 1. a civil proceeding against any **Insured** seeking

---

[20] Record document number 33-1. Westchester exhibit A, p. 4, policy Declarations page. (In the policy, bold type is used when referring to a term which is defined in the DEFINITIONS. When bold type is used in this report, the term is also in bold type in the policy.)

[21] *Id.*, Part I, subsection B, p. 6.

>   monetary damages or non-monetary or injunctive relief, commenced by the service of a complaint or similar pleading, and
>
>   2. an administrative or regulatory proceeding against any **Insured** seeking monetary damages, commenced by the filing of a notice of charges, investigative order or similar document.[22]
>
> N.  **Policy Period** means the period of time specified in Item 2 of the Declarations, ..."[23]
>
> S.  **Wrongful Act** means, ... with respect to insuring Agreement B, a **Wrongful Employment Practice**, committed or attempted by the **Named Insured**, or by any other **Insured** soley in the performance of duties for the **Named Insured**, in connection with **Airport Operations.**[24]
>
> T.  **Wrongful Employment Practice** means any actual or alleged:
>     ...
>     3. violation of any federal, state, or local laws (whether common or statutory) concerning employment or discrimination in employment;
>     4. sexual harassment or other unlawful workplace harassment;
>     ...
>     8. failure to adopt adequate workplace or employment policies and procedures; or
>     ...[25]

The policy defines **EXTENDED REPORTING PERIODS** in pertinent part as follows:

---

[22] *Id.*, Part II, subsection D, p. 6.

[23] *Id.*, subsection N, p. 7.

[24] *Id.*, subsection S, p. 8. "**Interrelated Wrongful Acts** means are all **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of related facts, circumstances, situations, events, transactions or causes." *Id.*, subsection J, p. 7.

[25] *Id.*, subsection T, p. 8.

> If the **Insurer** terminates or does not renew this **Policy** (other than for failure to pay a premium when due), or if the **Named Insured** terminates or does not renew this **Policy** and does not obtain replacement coverage as of the effective date of such cancellation or non-renewal, the **Named Insured** shall have the right, upon payment of the additional premium described below, to a continuation of the coverage granted by the **Policy** for at least one **Extended Reporting Period** as follows:[26]

Finally, the NOTICE section of the policy states in relevant part as follows:

> A. The **Insured** shall, as a condition precedent to their rights under this **Policy**, give to the **Insurer** written notice of any **Claim** as soon as practicable, but in no event later than 30 days after the later of the end of the **Policy Period**, the Automatic **Extended Reporting Period**, or, if elected, the Optional **Extended Reporting Period**.[27]

Looking to the plain language of the above terms and definitions, the uncontested facts demonstrate that the state court Petition filed by the plaintiff on September 21, 2008, which alleged violations of federal and state employment laws, was a Claim under the policy by an employee of the Insured for a Wrongful Act or Wrongful Employment Practice. It is undisputed that this Claim was not reported to Westchester until August 20, 2009, more than nine months after the Airport had notice of the plaintiff's Claim.[28] The clear and explicit terms of the policy required that

---

[26] *Id.*, Part V, p. 11.

[27] *Id.*, Part VIII, subsection A, p. 13.

[28] *Id.*, Exhibit E, Loyal affidavit, ¶ 6, attached pp. 150-52.

a Claim be first made and reported to the insurer during the policy period. In the DEFINITIONS section, the Policy Period means the period specified in Item 2 of the Declarations, which in this case is 2/28/08 to 2/28/09.[29] The NOTICE provision of the policy required the Airport to give written notice of any Claim no later than 30 days after the end of the Policy Period. The Airport's report of the Claim to Westchester on August 20, 2009 clearly was not within the Policy Period or within 30 days after the end of that period. Therefore, although the Claim was made during the Policy Period, there was no coverage for it under the 2008-2009 policy because the Airport failed to comply with the policy's NOTICE provision.

The Airport and the plaintiff argued that the Claim was timely reported under Section V of the of the 2008-2009 policy, the EXTENDED REPORTING PERIODS. Their argument is unpersuasive. A plain reading of provision shows that it applies to and provides an extended period for reporting Claims made during the Policy Period, only when the insurer or the insured terminates or does not renew the policy.[30] The undisputed facts show that neither Westchester nor the Airport terminated or did not renew the policy during this

---

[29] *Id.*, Exhibit A, policy Declarations, p. 4, and Part II, DEFINITIONS, subsection N., p. 7.

[30] *Id.*, p. 11.

time.³¹  These undisputed facts and the clear language of the policy establish that EXTENDED REPORTING PERIODS for reporting the Claim made during the Policy Period were not available to the Airport.

The Airport's alternative arguments are equally unpersuasive.

The Airport argued that the renewal of the policy in February 2009 served as an extension of the reporting period.  The Airport did not point to any language of the policy to support this argument.  Moreover, if this argument was accepted it would contradict the plain terms of the policy, which clearly require that the claim be "first made against the **Insured** and reported to the **Insurer** during the **Policy Period**, or, if elected, the **Extended Reporting Period**." (Underline added.)  No evidence was offered to show that the Airport "elected [] the **Extended Reporting Period**" by payment of the required additional premium, as set forth in Item 8A of Declarations.

The Airport argued next that it reported the Claim within the Policy Period by answering certain questions included in its renewal applications. According to Airport, it timely reported the Claim by affirmatively answering that in the last three years it was involved in employment/labor related litigation, and proceedings with agencies that address employee related claims.³² However, the policy contains a provision that specifically

---

³¹ Record document number 37-2, Marino affidavit.

³² Record document number 37-4, p. 6.

addresses the timing and form of notice to the insurer of any Claims. The Airport failed to demonstrate that the answers on its renewal application complied with the NOTICE requirements of the policy.[33]

Apparently attempting to at least establish coverage for the plaintiff's Title VII claim, the Airport argued that the Title VII claim was both made and reported during the 2009-2010 Policy Period, since the plaintiff did not assert it until she filed her amended petitions in April and May 2009. However, this argument is not supported by the policy language which defines Claim and a Wrongful Employments Practice. A Claim under the policy is not defined in terms of a legal claim for relief. A Claim is a civil proceeding against the insured commenced by the service of a complaint or similar pleading.[34] That civil proceeding against the Airport began on September 21, 2008 when the plaintiff filed and served her initial state court Petition asking for relief from the Airport's Wrongful Employment Practice. It is evident that the same facts, events and circumstances alleged when the suit was filed on September 21, 2008 were also the basis for the plaintiff's Title VII claim.[35] Therefore, this alleged violation of federal

---

[33] Record document number 33-1, exhibit A, policy Part VIII, section C., pp. 13-14.

[34] *Id.*, Part II, subsection D, p. 6.

[35] Plaintiff also gave specific notice of her Title VII claim (continued...)

employment law was already a part of the civil proceeding against the Airport commenced by the plaintiff when she made the Claim by filing the state court Petition. Given these facts and policy definitions, the later addition of another legal claim by filing an amended petition did not commence a new civil proceeding against the Airport, and therefore it was not a Claim first made against it for a Wrongful Employment Practice in April or May 2009.

Finally, the Airport argued that Westchester cannot deny coverage based on the failure to report the plaintiff's Claim within the Policy Period because its claims-made policy violates Louisiana law and public policy. The Airport contended that the claims made and reporting provisions are against public policy, void and unenforceable because: (1) they violate LSA-R.S. 22:868 (formerly LSA-R.S. 22:629) by reducing the prescriptive period to less than one year for the state and federal claims alleged by the plaintiff;[36] and, (2) they deprive an individual of the right to

---

[35](...continued)
in her Petition. Plaintiff alleged that she had met all conditions precedent to suit, timely filed her charges of discrimination with the EEOC and LCHR, requested but had not yet received her Notice of Right to Sue, and reserved her right to supplement and amend the Petition on receipt of the Notice. Record document number 1-1, state court Petition, ¶ 25.

[36] LSA-R.S. 22:868 provides in pertinent part:

B. No insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state, or any health and accident policy insuring a resident of this state regardless of
(continued...)

file a claim because a plaintiff is unable to satisfy both the prescriptive periods and policy requirement that the claim be both made and reported within one policy period.[37]

The Airport's arguments are confusing and ultimately unpersuasive. More importantly, the cases cited and relied on by the Airport to support its LSA-R.S. 22:868 and public policy arguments are neither controlling nor persuasive. The First Circuit Court of Appeal decisions in *Bennett* and *Leblanc* relied on the holding and reasoning of *Hedgepeth v. Guerin*.[38] The *Hedgepeth* decision was abrogated by the Louisiana Supreme Court in *Hood v. Carter*.[39] The reasoning and holding of the court in *Hood*

---

[36](...continued)
where made or delivered, shall contain any condition, stipulation, or agreement limiting right of action against the insurer...to a period of less than one year from the time when the cause of action accrues in connection with all other insurances unless otherwise specifically provided in this Code.

C. Any such condition, stipulation, or agreement in violation of this Section shall be void, but such voiding shall not affect the validity of the other provisions of the contract.

[37] Record document number 37-1, Airport opposition memorandum, pp. 6-7.

[38] 96-1044 (La.App. 1 Cir. 3/27/97), 691 So.2d 1355.

[39] 2008-0215, 2008-0237 (La. 12/2/08), 5 So.3d 819; *see also, Vitto v. Davis*, 2009-498 (La.App. 3 Cir. 11/4/09), 23 So.3d 1048, 1051-52; *Joiner v. Taylor*, 2008-1269 (La.App. 1 Cir. 2009), 9 So.3d 201, 204; *Bell v. Parry*, 10-369 (La.App. 5 Cir. 11/23/10), 2010 WL 4823830; *Gray v. Credeur*, 09-1113 (La.App. 3 Cir. 3/10/10), 2010 WL 817337.

demonstrate that the Airport's arguments are without legal support. As explained by the court in *Hood*, the policy provision limiting coverage to those claims made and reported during the policy period does not limit the plaintiff's right to bring suit against Westchester; rather, it provides the scope of coverage bargained for by the Airport.[40] There simply is no coverage for the plaintiff's Claim, and the reason is that the Airport failed to timely and properly report the Claim to Westchester.

**Conclusion**

The clear and explicit terms of Westchester Policy Number G23984076 002 required a Claim to be first made against the Airport and reported to Westchester during the Policy Period, 2/28/08 to 2/28/09, with notification being made no later than 30 days after the end of the Policy Period. The undisputed facts establish that the Claim was made against the Airport when the plaintiff filed her state court Petition on September 21, 2008, and it was not reported to Westchester until August 20, 2009, which was clearly well after the Policy Period ended.

Defendant Westchester has shown that there are no genuinely disputed material facts and, as a matter of law, there is no coverage under the policy for the plaintiff's Claim.

---

[40] *Hood*, at 829.

**RECOMMENDATION**

It is the recommendation of the magistrate judge that the Motion for Summary Judgment filed by Westchester Surplus Lines Insurance Company be granted.

Baton Rouge, Louisiana, April 11, 2011.

*Stephen C. Riedlinger*
STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE